IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 4:21CR63 (RCY) |
| | ) | Civil Action No. 4:23CV106 (RCY) |
| CALVIN THOMAS LEE, | ) | |
|     Petitioner. | ) | |

## MEMORANDUM OPINION

Petitioner, Calvin Thomas Lee, a federal prisoner proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Petition"), ECF No. 51. The Court finds that the materials before it adequately present the facts and legal contentions, and that a hearing would not aid the decisional process. For the reasons set forth below, Lee's § 2255 Petition will be DENIED.

### I. BACKGROUND & PROCEDURAL HISTORY

Between 2019 and 2022, federal and local law enforcement officials were involved in investigating Lee for drug trafficking offenses. *See* Statement of Facts ("SOF") ¶¶ 1–8, ECF No. 30. On October 12, 2021, a federal grand jury returned an Indictment charging Lee with (i) five counts of Distribution of Cocaine and Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (ii) one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). Indictment at 1, ECF No. 3. "In February 2022, [while] attempting to locate [Lee] on outstanding state and federal warrants, members of the investigative team tried to locate him using GPS pings of his cell phone, which led them to the area of a residence on Nantucket Place" in Newport News, Virginia. SOF ¶ 7. Authorities set up "[s]tationary surveillance" at this location and observed Lee enter an apartment. *Id.* "On or about February 11, 2022, members of the investigative team again established surveillance on Nantucket Place and followed [Lee] as he made five brief stops" where he engaged in behavior with other individuals that was consistent

with drug transactions. *Id.* ¶ 8. After Lee's last stop, authorities "stopped individuals with whom [Lee] had met." *Id.* These individuals "admitted to having just purchased cocaine from [Lee]." *Id.*

On February 23, 2022, authorities "applied for and obtained federal search warrants for the vehicle operated by [Lee] and for [Lee's] arrest at his Nantucket Place residence in Newport News, Virginia." *Id.* ¶ 9; *see also* Search Warrant Appl., ECF No. 55-1 at 9–21. Authorities "executed both search warrants on February 24, 2022, [and] arrested [Lee] inside his Nantucket Place residence." SOF ¶ 9. Authorities recovered cocaine, a firearm, cash, and other indicia of drug trafficking. *See id.* ¶¶ 10–11.

Lee made his initial appearance in this Court on June 8, 2022,[1] at which time he requested court-appointed counsel. *See* Initial Appearance Minutes, ECF No. 11. The Court appointed the Federal Public Defender to represent Lee. *See id.* Attorney Andrew Grindrod of the Federal Public Defender's office represented Lee during all relevant stages of the proceedings. *See* Grindrod Aff. ¶ 2, ECF No. 55-1 at 1–5.

On June 14, 2022, the grand jury returned a superseding indictment charging Lee with (i) seven counts of Distribution and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (ii) two counts of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1); and (iii) one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A). Corrected Superseding Indictment at 1, ECF No. 41.

On August 9, 2022, Lee appeared before United States Magistrate Judge Robert J. Krask and pleaded guilty, pursuant to a written Plea Agreement and Statement of Facts, to Count 8s

---

[1] Lee was held on state charges from the time of his arrest on February 24, 2022, until June 8, 2022, when he was transferred to federal custody. *See* PSR ¶¶ 64, 77, ECF No. 47.

(Distribution and Possession with Intent to Distribute Cocaine) and Count 9s (Possession of a Firearm in Furtherance of a Drug Trafficking Crime) of the Superseding Indictment. *See* Order at 1, ECF No. 31; Corrected Plea Agreement, ECF No. 42; SOF, ECF No. 30. The Court subsequently sentenced Lee to 60 months imprisonment on Count 8s and 60 months imprisonment on Count 9s, to be served consecutively. Am. J. at 2, ECF No. 48.

Lee timely filed his § 2255 Petition, and the Court ordered the Government to file a response. Mem. Order at 1, ECF No. 52. The Government moved to compel Attorney Grindrod to file an affidavit responding to the allegations in Lee's Petition, and the Court granted that motion. *See* Mot. Compel at 1–2, ECF No. 53; Order at 1, ECF No. 54. Attorney Grindrod filed an affidavit in response to the Court's Order, and the Government filed its Response in Opposition to Lee's Petition. Grindrod Aff., ECF No. 55-1 at 1–5; Resp., ECF No. 55. Lee moved for two extensions of time to file a reply, which the Court granted. Mots. Ext., ECF Nos. 56, 58; Orders, ECF Nos. 57, 59. Lee subsequently filed his Reply, ECF No. 60. Lee's § 2255 Petition is accordingly ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence (1) that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," (2) that the district court "was without jurisdiction to impose such sentence," (3) that the sentence exceeds "the maximum authorized by law," or (4) that the sentence or conviction is "otherwise subject to collateral attack." *Id.*; *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

While a § 2255 motion enables a petitioner to collaterally attack his sentence or conviction by initiating a new proceeding, the existence of the right to pursue a collateral attack does not

displace a direct appeal as the "usual and customary method of correcting trial errors." *United States v. Allgood*, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).  On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." *Id.* at 165–66.  For this reason, the doctrine of procedural default prevents a district court from reaching the merits of most § 2255 claims that could have been raised on direct appeal.

However, a § 2255 petitioner need not overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion.  *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997).  To obtain relief based on an allegation of ineffective assistance of counsel, a petitioner must establish two things: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance resulted in prejudice to the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  Conclusory statements are insufficient to carry a petitioner's burden.  *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000))).

Satisfying the first prong of *Strickland* requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance.'" *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690).

The second prong of *Strickland* requires a petitioner to "affirmatively prove prejudice," which means he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice prong is slightly modified where, as here, a petitioner challenges a conviction entered after a guilty plea; in such circumstances, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### III.  DISCUSSION

Lee raises six claims for relief. In Claims 1 and 2, Lee asserts that Attorney Grindrod was constitutionally ineffective for failing to "properly investigate [the] warrantless entry" by authorities into 143 Nantucket Place, i.e., the home at which Lee was arrested, and for "failing to file a motion to suppress [the] firearm and drugs" located within the home.[2] Pet. 4–5. In Claim 3, Lee asserts that the Government "committed prosecutorial misconduct by having Lee plea[d] to the § 924(c)" count "while knowing that the entry into a third party's residence without a search warrant to execute the outstanding arrest warrant was an illegal entry." *Id.* at 17. In Claim 4, Lee asserts that the Government withheld evidence that "proved the DEA illegally enter[ed] 143 Nantucket Place." *Id.* at 7–8. In Claim 5, Lee alleges that due to the Government's misconduct and his attorney's errors, his plea agreement should be invalidated. *Id.* at 21. Finally, in Claim 6, Lee alleges that his sentence on the firearms count (Count 9s) is invalid. *Id.* at 25.

---

[2] Unless otherwise indicated, the Court corrects any grammatical, spelling, and capitalization errors in its references to and quotations from Lee's Petition.

### A. Ineffective Assistance of Counsel (Claims 1 & 2)

Lee claims that Attorney Grindrod was ineffective for "failing to investigate Law Enforcement's Illegal Warrantless entry into a third party's residence to execute an arrest warrant on Lee" (Claim 1), and for "failing to file a motion to suppress all evidence seized [by] law enforcement, when they illegally entered a third party's residence without an authorized search warrant to execute an outstanding arrest warrant on Lee" (Claim 2). Pet. 13, 15. To establish an ineffective assistance claim based upon failure to file a suppression motion, courts employ a modified *Strickland* test. *See Grueninger v. Dir., Va. Dep't of Corrs.*, 813 F.3d 517, 525 (4th Cir. 2016). To meet the performance prong of this modified test, Lee must show that the "unfiled motion would have had 'some substance.'" *United States v. Pressley*, 990 F.3d 383, 388 (4th Cir. 2021) (quoting *Grueninger*, 813 F.3d at 524–25). "If the motion would have had some substance, then we ask whether reasonable strategic reasons warranted not filing the motion." *Id.* To meet the prejudice prong, Lee must "show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial." *Grueninger*, 813 F.3d at 525 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

It is true that an arrest warrant, by itself, would not have authorized authorities to enter the home of a third party to arrest Lee. *See United States v. Brinkley*, 980 F.3d 377, 384 (4th Cir. 2020) (explaining that "absent exigent circumstances or consent, the Fourth Amendment requires police to obtain a search warrant before trying to apprehend the subject of an arrest warrant in a third party's home" (citing *Steagald v. United States*, 451 U.S. 204, 216 (1981))). The Government argues, however, that Lee's ineffective assistance claims are without merit because "Nantucket Place *was* his residence." Resp. 9 (emphasis added).

As the Government points out, the Statement of Facts in this case—which Lee agreed under oath was true and accurate—identifies 143 Nantucket Place as Lee's "residence." *See* SOF at 3–4; *see also* Sent'g Tr. at 29–30. This is also supported by ample additional evidence in the record. *See* SOF ¶¶ 7–8 (summarizing agents' use of GPS cell phone data to locate Lee in the area of Nantucket Place and their physical surveillance of Lee at that specific address); Search Warrant Aff. at 5–9 (detailing the information upon which authorities relied to establish that Lee was residing at 143 Nantucket Place, including GPS cellphone data and physical surveillance, as well as their observations that Lee "start[ed] and end[ed] his day at 143 Nantucket Place," and that there had "been no activity observed at 143 Nantucket Place, besides the comings and goings of [Lee]"); *see also* Presentence Rep. ("PSR") ¶ 77, ECF No. 47 (noting that Lee "reported that before he was arrested in Hampton, Virginia, on February 24, 2022, he lived alone at 143 Nantucket Place, Newport News, Virginia, for approximately four months").

Attorney Grindrod avers in his affidavit that, based on his review of the pertinent information at the time, he "did not think there [wa]s a serious question about whether law enforcement had probable cause to believe that Mr. Lee was residing at the Nantucket Place address." Grindrod Aff. ¶ 10 (summarizing the information upon which authorities based their belief that Lee was residing at 143 Nantucket Place, and upon which Attorney Grindrod based his assessment). The record before the Court shows that Attorney Grindrod made a reasonable strategic decision, based upon the applicable law and his thorough review of the facts of this case, to not file a motion to suppress that he believed lacked merit. Lee offers nothing of substance to support his claim that he was not residing at 143 Nantucket Place. *See* Pet. 13–24; Reply 1–9. Lee has failed to show any prejudice from Attorney Grindrod's decision not to file a suppression motion on the grounds that Lee was not residing at 143 Nantucket Place, and Lee's ineffective assistance of counsel claims fail on this basis. *See Grueninger*, 813 F.3d at 525; *see*

7

*also Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (explaining that "[o]nce counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable'" (quoting *Strickland*, 466 U.S. at 688)).

Moreover, Lee's claims also fail because they rest on his erroneous assertion that authorities entered 143 Nantucket Place on the basis of an arrest warrant. *See* Pet. 13–14 (Lee alleging in support of his ineffective assistance claims that authorities entered 143 Nantucket Place to "execute an outstanding arrest warrant" on Lee). This is not correct. As the Government points out in its Response, the agents did not only have an arrest warrant when they went to 143 Nantucket Place to arrest Lee. *See* Resp. 2, 4. Contrary to Lee's claim, when authorities went to 143 Nantucket Place on February 24, 2022, they had both an arrest warrant *and* a search warrant for Lee. *See id.* at 4. Attorney Grindrod also notes this fact in his Affidavit. *See* Grindrod Aff. ¶ 11.

The record in this case shows that on February 23, 2022, Magistrate Judge Krask issued a search warrant for 143 Nantucket Place to search for, and seize, Lee, and issued a second search warrant for Lee's car. *See* Search Warrant Appl., ECF No. 55-1 at 9–21; SOF ¶ 9 (stating that "members of the investigative team applied for and obtained federal search warrants for the vehicle operated by the defendant and for the defendant's arrest at his Nantucket Place residence in Newport News, Virginia").[3] The next day, February 24, 2022, agents entered the home pursuant to the search warrant and arrested Lee. *See* SOF ¶ 9 (stating that "[m]embers of the investigative team executed both search warrants on February 24, 2022, [and] arrested the defendant inside his Nantucket Place residence"); Executed Search Warrant at 1–2, No. 4:22sw8 (E.D. Va. Mar. 4, 2022), ECF No. 5 (indicating that the search warrant issued on February 23, 2022, authorizing the search of 143 Nantucket Place for Lee's person, was executed on February 24, 2022, and that Lee was seized pursuant to that warrant); *see also* Grindrod Aff. ¶¶ 11–12 (recounting his

---

[3] The search warrant itself is filed in this Court in case No. 4:22sw8 (E.D. Va. Feb. 23, 2022), at ECF No. 4.

8

understanding of the events relating to the entry of 143 Nantucket Place and Lee's arrest); Resp. 4 (noting that "Lee was arrested on February 24, 2022 during execution of the *search* warrant" (emphasis added)).

Thus, the record conclusively shows that agents entered 143 Nantucket Place and arrested Lee pursuant to a validly executed search warrant. Lee does not acknowledge the existence of the search warrant in his Petition, much less challenge the validity of the search warrant. *See* Pet. 4–24. The search warrant plainly allowed authorities to enter 143 Nantucket Place to arrest Lee regardless of whether it was his residence or a third party's residence. *See Steagald*, 451 U.S. 204. Accordingly, Lee has failed to demonstrate that any unfiled motion to suppress would have had some substance. Likewise, Lee has not come close to demonstrating prejudice by showing that a suppression motion would have been meritorious and likely would have been granted. *See Grueninger*, 813 F.3d at 525.

Lee's claims—that his counsel was ineffective for not investigating the alleged "illegal warrantless entry into a third party's residence to execute an arrest warrant on Lee," and for not pursuing a suppression motion on this basis—fail for all of the above reasons. Accordingly, Claim 1 and Claim 2 will be DENIED.

## B. Government Misconduct (Claims 3 & 4)

In Claims 3 and 4, Lee asserts that the Government committed prosecutorial misconduct and "failed to turn over *Brady*[4] material and exculpatory evidence."[5] Pet. 17, 19. In support of

---

[4] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that prosecutors have an affirmative duty to disclose evidence that is both favorable to the defendant and "material either to guilt or punishment").

[5] The Court notes that typically, "[c]laims of prosecutorial misconduct are procedurally defaulted if they could have been, but were not, raised on direct appeal." *Fuller v. United States*, No. 4:13cr72, 2018 WL 3398129, at *3 (E.D. Va. July 11, 2018). However, "claims of prosecutorial misconduct alleging *Brady* violations are properly raised in a § 2255 motion." *Id.* Although Lee's Petition sets out separate claims for prosecutorial misconduct (Claim 3) and a *Brady* violation (Claim 4), it appears to the Court that the substance of both claims relates to the Government's alleged withholding of *Brady* material. *See* Pet. 17–18 (Lee asserting in support of his prosecutorial misconduct claim that the Government's misconduct stems from "withholding of exculpatory evidence"). Accordingly, the Court will analyze both claims under the same framework.

9

his claims, Lee alleges that the Government "knew that the address Lee was arrested at [143 Nantucket Place] was not Lee's residence," and that the Government did not turn over evidence purporting to prove this allegation. *Id.* at 18–19. Lee further asserts that the Government "knew [that agents] did not have a search warrant to legally enter the third party's residence to execute an outstanding arrest warrant on Lee." *Id.* at 17. According to Lee, the Government withheld evidence showing 143 Nantucket Place was not Lee's residence in order to "get Lee to enter into a plea and not file a motion to suppress." *Id.*

It is well established that, under *Brady*, "prosecutors have an affirmative duty to disclose evidence that is both favorable to the defendant and 'material either to guilt or punishment,' and [s]uppressing such evidence is a violation of the defendant's Fifth Amendment right to Due Process, 'irrespective of the good or bad faith of the prosecution.'" *Fuller v. United States*, 2018 WL 3398129, at *3 (E.D. Va. July 11, 2018) (quoting *Brady,* 373 U.S. at 87). To establish a *Brady* violation*,* Lee must show "that the undisclosed materials were (1) favorable to [him]; (2) material; and (3) that the prosecution had the materials and failed to disclose them." *United States v. Sarihifard*, 155 F.3d 301, 309 (4th Cir. 1998) (citing *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972)). "Evidence is 'material' under *Brady* 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *Fuller*, 2018 WL 3398129, at *3 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Like his ineffective assistance claims against his attorney, Lee's claims against the Government rest on his erroneous belief that the "the DEA illegally entered [a] third party's residence without a search warrant to execute an arrest warrant on Lee." Pet. 19. As explained above, however, authorities did not enter the Nantucket Place residence on the basis of Lee's outstanding arrest warrant. *See supra* Part III.A. Rather, they entered pursuant to the February

10

23, 2022 search warrant, which authorized authorities to enter that location and seize Lee. *See id.*; *see also* Search Warrant at 1. For this reason, Lee's place of residence on the date of his arrest is of no consequence. *See supra* Part III.A. Thus, even if the Court were to accept Lee's conclusory claims that the Government had information that Lee was not residing at 143 Nantucket Place, Lee fails to establish that such information was material under the standards set forth above. Accordingly, Claim 3 and Claim 4 will be DENIED.

### C. Involuntary Plea (Claim 5)

In Claim 5, Lee asserts that his "Plea Agreement should be invalidated due to it being entered into unknowingly and involuntarily." Pet. 21. Pursuant to Federal Rule of Criminal Procedure 11, "[p]rior to accepting a guilty plea, a trial court, through colloquy with the defendant, must inform the defendant of, and determine that he understands, the nature of the charge(s) to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty and various rights." *United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991); *see* Fed. R. Crim. P. 11(b). "The purpose of the Rule 11 colloquy is to ensure that the defendant enters the plea of guilt knowingly and voluntarily." *United States v. Marshall*, 359 F. App'x 440, 441 (4th Cir. 2010) (citing *United States v. Vonn,* 535 U.S. 55, 58 (2002)). As the Fourth Circuit Court of Appeals has explained, "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. LeMaster*, 403 F.3d 216, 220 (4th Cir. 2005); *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.").

11

Relevant to Lee's claims, at Lee's August 9, 2022 plea hearing, Magistrate Judge Krask asked Lee during the Rule 11 colloquy whether Lee believed that any of his "constitutional rights were violated in any way in connection with the seizure of any physical or tangible evidence." Plea Hr'g Tr. at 17.  Lee responded that although he believed that his rights had been violated, he had discussed the matter with Attorney Grindrod, and based on those discussions, Lee decided "[t]o not pursue" a suppression motion. *Id.*; *see also* Grindrod Aff. ¶ 8 (Attorney Grindrod averring that he had discussed the suppression issue with Lee and that he had advised Lee "multiple times" that he did not believe there was a meritorious basis for a suppression motion).  Lee further acknowledged that he understood that he was giving up the right to raise a challenge to any unlawful search or seizure by pleading guilty. *See* Sent'g Tr. at 17–18.

Lee, however, now asserts that his plea was involuntary and was coerced by his counsel's purported ineffectiveness and the Government's misconduct. *See id.* at 21–23.  Specifically, Lee claims that he would not have pleaded guilty (1) if the government had not withheld exculpatory evidence demonstrating that Lee did not reside at 143 Nantucket Place; and (2) if his attorney had not incorrectly advised him that authorities could enter the residence on the basis of an arrest warrant alone, regardless of whether he actually lived there. *See id.* at 21–22.  Lee maintains that had these two things not occurred, he would have "insisted on going to a [s]uppression hearing and [t]rial." *Id.* at 23.

As discussed in detail herein, Lee's claims of ineffective assistance of counsel and government misconduct are meritless because they rest upon his faulty assertion that the agents who arrested him did so solely on the basis of an arrest warrant. *See supra* Parts III.A–B. (determining that the record conclusively shows that agents arrested Lee pursuant to a validly issued *search* warrant that authorized them to search 143 Nantucket Place for Lee's person, rather than an arrest warrant, as Lee claims).  Having found Lee's ineffective assistance and government

12

misconduct claims to be meritless on this basis, his involuntary plea claim also necessarily fails because it rests upon the same false premise. Accordingly, Claim 5 will be DENIED.

### D. Lee's § 924(c) Sentence (Claim 6)

Finally, in Claim 6, Lee asserts that he "was not sentenced pursuant to the intent of Congress pertaining to his § 924(c) sentence." Pet. 25. Lee apparently takes issue with the wording of the Court's Judgment, which states that Lee is "to be imprisoned for a term of 120 months. This term consists of 60 months on count 8s and a term of 60 months on count 9s, all to be served consecutively." Am. J. at 2; *see* Pet. 25. Lee claims that the Court's sentence causes "Lee to not be eligible for the First Step Act." Pet. 25. Lee requests that the Court resentence him to "the 924(c) first" and to order that the sentence for the drug-related charge run consecutive to the sentence for the § 924(c) charge. *Id.*

With respect to Lee's reference to the First Step Act, it appears that Lee is referring to a provision of the First Step Act of 2018, codified at 18 U.S.C. § 3632(d)(4)(A), which provides that eligible prisoners who "successfully complete[] evidence-based recidivism reduction programming or productive activities, shall earn time credits" toward their active sentences. *See* 18 U.S.C. § 3632(d)(4)(A). Lee's conviction for the § 924(c) charge, however, renders him ineligible to earn these time credits. *See* 18 U.S.C. § 3632(d)(4)(D)(xxii) (providing that "a prisoner is ineligible to receive time credits . . . if the prisoner is serving a sentence for a conviction under . . . Section 924(c), relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime").

The Court was required to order that Lee's sentence for the § 924(c) charge run consecutively to his sentence for the drug trafficking charge. *See* 18 U.S.C. § 924(c)(1)(D). Even if the Court were not required to do so, this would not help Lee, because it is the fact of his

13

conviction under § 924(c) that renders him ineligible to earn the time credits, not the sentence he received for it.

In sum, Lee was properly sentenced in accordance with the requirements of § 924(c)(1)(D), and even if the Court were to grant Lee the sentence modification he requests, it would not render him eligible to earn time credits under the First Step Act. Accordingly, Claim 6 will be DENIED.

## IV. CONCLUSION

For the reasons set forth above, Lee's claims will be DENIED in their entirety and his § 2255 Petition, ECF No. 51, will be DISMISSED. A certificate of appealability will be DENIED.[6]

An appropriate Final Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Dated: July 15, 2025
Richmond, Virginia

---

[6] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Lee has not satisfied this standard.